### Pearman *v.* Pearman.

## Opinion delivered June 21, 1920.

1. QUIETING TITLE — JURISDICTION.—The jurisdiction of equity to quiet title, independently of statute, can be invoked only by a plaintiff in possession, unless his title be merely an equitable one; the remedy at law being otherwise adequate.

2. QUIETING TITLE—TAX TITLE.—Under Kirby's Digest, § 665, providing that there shall be no confirmation of tax sales of any lands in adverse possession of another, plaintiff can not maintain a suit in equity to confirm a tax title to land held adversely by the defendant.

Appeal from Arkansas Chancery Court, Southern District; *John M. Elliott,* Chancellor; reversed.

STATEMENT OF FACTS.

G. W. Pearman brought this suit in equity under that part of chapter 25 of Kirby's Digest relating to the confirmation of tax titles.

Anna Pearman was allowed to file exceptions to the petition on the ground that she resided on the property and was in actual adverse possession of it. G. W. Pearman filed a response in which he denied that Anna Pearman was in legal possession of the property, or had been for several years last past.

G. W. Pearman was a witness for himself. According to his testimony, he was the owner of three lots in the town of DeWitt, Arkansas, and had owned them since December, 1898. The lots in controversy were sold at a tax sale in 1896 for the taxes of 1895. On June 14, 1898, the clerk executed a tax deed to J. A. Gibson, the purchaser at the tax sale. On June 25, 1898, J. A. Gibson, by a quitclaim deed conveyed the lots to L. C. Smith,

and on December, 1898, L. C. Smith conveyed the lots to G. W. Pearman. G. W. Pearman has paid the taxes on the lots every year since he purchased them. He gave his son, Arthur Pearman, permission to build a house on the lots. He furnished to his son part of the lumber, and his son, who was a carpenter by trade, furnished the balance of the lumber and materials, and himself erected the house. Pearman allowed his son to live on the place rent free and intended that in case he died first that his son should have the lots as a part of his portion of the father's estate. The son became sick and went West for his health. On his return he resided with his father, but was allowed to receive the rents from the property. The son rented out the property, and his tenant was in possession of it at the time he died. A few days before the son's death, G. W. Pearman told him that he intended to deed the property to the son's infant child as soon as he could quiet the title to the property.

Anna Pearman is the widow of Arthur Pearman, who was the son of G. W. Pearman. She and Arthur Pearman were married on the second day of October, 1915, and lived together as husband and wife until the husband died. A child was born unto them on November 4, 1916, and it died just three months after the death of its father. Arthur Pearman and Anna Pearman, his wife, moved into the house, which had been built by him on the lots in controversy, as soon as they were married and lived there until Arthur Pearman went West for his health. They then rented the property and Arthur Pearman collected the rents as long as he lived. After Arthur Pearman died, Anna Pearman did not collect the rents for two months; but after their baby died she again began collecting the rents. Subsequently she moved into the house and requested G. W. Pearman to make her a deed to the property, claiming that he had given the lots to his son before the latter erected the dwelling house on them. G. W. Pearman refused to make her a deed, and she continued to reside on the lots, claiming title to them and claiming to hold them adversely to

G. W. Pearman. This all occurred before G. W. Pearman brought suit under the statute to confirm his title in the lots. During the pendency of the proceedings, G. W. Pearman died, and the proceedings were revived in the name of his two sons, who were his sole heirs at law.

The chancellor found the issues in their favor and the title to the lots was quieted in them against the claims of all persons whomsoever. Anna Pearman has appealed.

*R. D. Rasco,* for appellant.

Appellant was the owner and in possession of the lots. The petitioner gave these lots to her late husband, who was the son of petitioner, and on the faith of the gift her husband built a residence on them, worth $1,250. After the death of the donee, petitioner denied the gift, and institutes this proceeding to confirm title in himself. The question is, was there a gift? The law is settled. 12 R. C. L., § 16; 5 L. R. A. 323. Possession and expenditures for improvements constitute part performance sufficient to take the case out of the statute of frauds and to authorize specific performance. 129 U. S. 305; 118 Ill. 73; 113 Ind. 256; 9 Wall. 1; 114 Ill. 302; 5 Mont. 26; 62 Mich. 15; 32 Ark. 97. The proof here was clear and convincing. 44 N. W. 721; 133 Ia. 351; 110 N. W. 840. Such a promise stands on the same footing with a promise to sell. 143 N. Y. 34; 3 Am. Rep. 657. This is not a suit for specific performance; the land really belongs to appellant, and appellees are not entitled to a confirmation of title. The chancellor erred in its findings that there was no testimony to show an agreement to convey these lots to Arthur Pearman. The testimony of G. W. and C. B. Pearman shows there was such an agreement. Thornton on Gifts, §§ 256, 401. Our statute provides there shall be no confirmation of title to lands in the actual possession of one claiming adverse title to the petitioner. 1 Ark. 472. When appellant objected to confirmation on account of being the owner and in actual

possession of the land, no decree should have been entered under our statutes. The remedy was in ejectment. 51 Ark. 259; 27 *Id.* 233, 414; 29 *Id.* 612; 30 *Id.* 579; 37 *Id.* 643; 43 *Id.* 32; 44 *Id.* 436; 17 A. & Eng. Enc. Pl. & Pr. 307; 27 Pac. 427; 87 Pac. 427; 21 Standard Enc. of Prac., p. 1015.

This court will sift the evidence and determine what the chancellor's finding should have been, 43 Ark. 307, and where erroneous will reverse. 31 Ark. 85; 98 *Id.* 459. Appellant is certainly entitled to pay for the improvements, and petitioner stated he was willing to pay. The chancellor erred in ignoring this offer, and gave appellant nothing.

*Lee & Moore,* for appellees.

The parol gift being asserted by appellant, the burden was upon her to establish same; the evidence shows that she has not met the issue by a preponderance of the evidence. To constitute a gift, it must clearly appear that the intention was to transfer the present title. 12 R. C. L., p. 940, par. 7. The mere fact that a child is in possession, and has made improvements on the promise that the land will be given to the child at the father's death, will not take the case out of the statute of frauds. 12 R. C. L., p. 940, par. 17; 63 Ark. 107; 82 *Id.* 43; 134 *Id.* 605. The decree is right and should be affirmed.

HART, J. (after stating the facts). The equity jurisdiction to quiet title, independent of statute, can only be invoked by a plaintiff in possession, unless his title be merely an equitable one. The reason is that where the title is a purely legal one and some one else is in possession, the remedy at law is plain, adequate and complete, and an action of ejectment can not be maintained under the guise of a bill in chancery. In such case the adverse party has a constitutional right to a trial by a jury. *Mathews* v. *Marks,* 44 Ark. 436; *Ashley* v. *Little Rock,* 56 Ark. 391; *Burke* v. *St. Louis,*

*I. M. & S. Ry. Co.*, 72 Ark. 256, and *St. Louis Refrigerator & Wooden Gutter Co.* v. *Thornton*, 74 Ark. 383.

The action has been greatly extended by statute and in many States is the ordinary mode of trying disputed titles. Pomeroy's Equity Jurisprudence (3 ed.), vol. 4, section 1396. Such is not the case in this State, however.

Section 665 of Kirby's Digest, which is a part of the chapter relating to the method of procedure in confirming tax titles, provides that there shall be no confirmation of the sale of any lands that are in actual possession of any person claiming title adverse to the petitioner. At the time the proceedings in the case at bar were brought by G. W. Pearman, Anna Pearman was in the actual possession of the lots in controversy, claiming title thereto adverse to the petitioner. She claimed that G. W. Pearman had given the lots to his son who was her husband, and that she and her husband had resided on the lots until they went West and afterward collected the rents on the same until his death. He left surviving him his widow and an infant child. The child died in about three months after the father, and the widow went into possession of the lots after her child's death, and she claimed to hold adversely to G. W. Pearman at the time he brought the proceedings to confirm his tax title in the lots.

Anna Pearman did not seek to quiet her own title to the lots, and thereby give the court jurisdiction of the entire controversy as was the case in *Goodrum* v. *Ayers*, 56 Ark. 93. She was content to file exceptions to the right of G. W. Pearman to have his tax title confirmed and did not seek affirmative relief on her own account. She was in adverse possession of the lots at the time G. W. Pearman filed his petition to confirm his tax title; and the court erred in granting the relief prayed for.

It follows that the decree must be reversed and the cause will be remanded for further proceedings in accordance with the principles of equity and not inconsistent with this opinion.