## SIMMONS v. TURNER.

### Opinion delivered May 17, 1926.

1. APPEAL AND ERROR—FINAL DECREE.—A decree is final which canceled certain deeds and settled the issues as to the title to land, though it may be necessary to have a further decree to adjust the account between the parties.

2. PARTITION—ADVERSE POSSESSION—JURISDICTION.—Equity has no jurisdiction of an action for partition of lands of which the defendants are in possession holding adversely to the plaintiff.

3. QUIETING TITLE—ADVERSE POSSESSION—JURISDICTION.—U n d e r Crawford & Moses' Dig., § 8362, a plaintiff cannot invoke the jurisdiction of equity to confirm or quiet title in her to lands of which defendants are in the exclusive possession, claiming title adversely to her.

4. EQUITY—JURISDICTION OF LAW COURT.—In a suit for partition and for confirmation of title to property which was adversely held by defendants, matters alleged as grounds of equitable relief, which were merely ancillary and subsidiary to a legal title when established at law, should not be given primacy merely for the

purpose of defeating the jurisdiction of the law court to adjudicate the legal title and right to possession.        •

5.   TRIAL—WRONG FORUM—TRANSFER.—Where a complaint in equity stated a good cause of action at law, instead of overruling a demurrer and motion to dismiss, the court should have treated the demurrer and motion as a motion to transfer to the law court, and have transferred the cause to that court.

Appeal from Bradley Chancery Court; *E. G. Hammock,* Chancellor; reversed.

*D. A. Bradham* and *W. S. Goodwin,* for appellant.

*Williamson & Williamson,* for appellee.

WOOD, J.   This action was instituted December 14, 1923, in the chancery court of Bradley County by Mrs. Bessie Turner against George T. Simmons and his wife, Mrs. Beulah Simmons, and J. B. Hurley. Plaintiff alleged in substance that she and Mrs. Beulah Simmons were the owners of an undivided interest as tenants in common of eighty acres of land in Bradley County, which she described; that the defendants were in possession of said lands and claiming to be the sole owners thereof, and had been for three years, and she prayed that certain instruments, copies of which were made exhibits to her complaint, be canceled and set aside as clouds on her title, and that title to the land described be confirmed in the plaintiff and in Beulah Simmons as tenants in common, share and share alike, and that the lands be partitioned between them, and the plaintiff have immediate possession of her share of the lands and a judgment for rents. The defendants demurred, and also moved to dismiss the complaint. The demurrer stated that "the complaint does not state a cause of action in equity," and the motion to dismiss stated that the defendants "are in actual, open, notorious and adverse possession of the lands in suit and actually occupying the same at the present time, and were so occupying the same at the time of the institution of this suit; that the complaint does not state a cause of action cognizable in equity, but does state a cause of action cognizable at law." The demurrer and motion to dismiss were overruled. The defendants

then answered denying all the allegations of the complaint.

Samuel C. Brown obtained a patent from the United States Government to one hundred and sixty acres of land in Bradley County, including the eighty acres in controversy. He lived on this land as his homestead until his death. He died intestate, leaving a widow and two daughters. The elder daughter married G. W. Wagnon and the younger married W. C. Carter. Wagnon and his wife had two daughters, Ressie and Beulah. Ressie married Turner, and Beulah married Simmons. At the time of the death of Samuel C. Brown his daughter Turza was a small child, living on the homestead with her mother, Mrs. Samuel C. Brown. The other daughter, Mrs. Wagnon, was living with her husband, G. W. Wagnon, in Calhoun County. After the death of Brown, Wagnon and his wife moved on the homestead of Samuel C. Brown in Bradley County, and lived with and took care of Mrs. Samuel C. Brown and Turza as long as Mrs. Brown lived, and after her death they continued to take care of Turza until she married W. C. Carter and moved on the other half of the 160 acres of the Brown homestead not involved in this action. After the death of Mrs. Brown, Wagnon and his wife continued to live on the 80 acres in controversy until the death of Mrs. Wagnon, and after the death of Mrs. Wagnon, about 1887, Wagnon continued to live on the land until his death on June 24, 1921. Mrs. Ressie Turner and Mrs. Beulah Simmons are the sole and only heirs at law of Mr. and Mrs. G. W. Wagnon, and they, with the children of Mrs. Turza Carter, are the only heirs at law of Mr. and Mrs. Samuel C. Brown. George W. Wagnon executed two warranty deeds to his son-in-law, G. T. Simmons, conveying the north forty-acre tract of the eighty acres in controversy. The first deed was not recorded. The second deed was dated September 29, 1913, and was placed of record. Simmons and his wife still live on this north half of the land in controversy, and have so lived since 1908. At the death of Brown, in 1870, the 160 acres on which he

lived as his homestead passed to his widow, Mrs. Samuel C. Brown, for her life, she having a homestead and dower right therein, the reversionary interest in his estate being in Mrs. Wagnon and Mrs. Carter. At the death of Mrs. Brown the fee title vested in the two heirs of Samuel G. Brown, Mrs. Wagnon and Mrs. Carter. After the death of Mrs. Brown the land constituting the original 160 acres was partitioned between Mr. and Mrs. Wagnon and Mr. and Mrs. Carter. Wagnon and wife retained possession of the eighty acres in controversy, and Carter and Mrs. Carter took the other eighty acres not in controversy in this action. At the death of Mrs. Wagnon, Wagnon acquired a life estate in the land in controversy by curtesy, his two children, Mrs. Ressie Turner and Mrs. Beulah Simmons, having the reversionary interest, and at the death of Wagnon, in 1921, the fee title to the land passed to them as tenants in common and as the only surviving heirs of Mrs. Wagnon, who owned the fee to the land. The above is the history of the title in controversy substantially as it is stated by counsel of Mrs. Ressie Turner, and as alleged in her complaint.

On the other hand, the defendants in their answer alleged that Brown gave the lands in question to Wagnon for a good consideration, and placed him in possession thereof; that Wagnon made improvements and had continued in possession for over forty years; that Wagnon did not come into possession of the land by reason of a life estate vested in him by curtesy, but that he acquired the title while Mrs. Brown, his wife's mother, was still living. The defendants claimed the land therefore by adverse possession, and further set up that the plaintiff, having waited until the death of Wagnon to institute the action, was barred by laches and limitation from maintaining the same.

The trial court heard the cause upon the evidence adduced to sustain the contention of the respective parties, and entered a decree canceling the various instruments, copies of which were attached as exhibits to the plaintiff's complaint, and confirming and quieting

title to the land in controversy in the plaintiff and the defendant, Mrs. Beulah Simmons, as tenants in common, and directed that the lands be partitioned between them; appointed commissioners to make the partition, and directed that Mrs. Turner and Mrs. Simmons should each have the right to immediate and absolute and unconditional possession of that portion of said land allotted to them on said partition, for which writ of assistance may issue upon the request of the parties interested. The commissioners were also directed to report the value of the permanent improvements and by whom made and the rents of the tract of land for the years 1921 to 1925 inclusive, and the cause was continued as to the rights of the respective parties concerning the rents, improvements and taxes until the same is finally disposed of by the Supreme Court. From that decree is this appeal.

1. The appellee moved to dismiss on the ground that there is no final decree because the court continued the cause for further report of the commissioners as to improvements, rents and taxes. But the decree from which this appeal is prosecuted canceled a decree of confirmation and the various instruments, copies of which were made exhibits to the appellee's complaint, and which are designated in the decree. The decree also vested the absolute title in fee simple in the land in controversy in Mrs. Turner and Mrs. Simmons, share and share alike. Thus the decree canceled instruments and settled the issue as to the title to the lands in controversy between the appellants and the appellee. As to these matters the decree was final.

Perhaps the leading case in our reports on this subject is that of *Davey* v. *Davey,* 52 Ark. 224-227, where this court, speaking through Mr. Chief Justice COCKRILL, said: "Where the decree decides the rights to the property in contest and directs it to be delivered up, or directs it to be sold, and the complainant is entitled to have it carried into immediate execution, the decree must be regarded as final to that extent, although it may be neces-

sary for a further decree to adjust the account between the parties. *Forgay* v. *Conrad,* 6 How. 206; *Thompson* v. *Dear,* 7 Wall, 342.'' And further, ''it is allowed also where a distinct and severable branch of the cause is finally determined, although the suit is not ended.'' See also *Seitz* v. *Meriwether,* 114 Ark. 289-296, and cases there cited; *Robertson* v. *Yarbrough,* 160 Ark. 223.' In the last case, *supra,* we said: ''A consideration of the substance of the decree makes it clear that there was a complete and final determination of the cause, so far as it related to the appellant's assertion of title in her complaint and the assertion of title made by appellees in their cross-complaint.'' The motion to dismiss is therefore overruled.

2. When the appellee's complaint is boiled down, the essence of it is that she is the owner in fee simple, under a legal title, deraigned as set forth in her complaint, as a tenant in common with her sister, Mrs. Simmons, of an undivided half interest in the east half of the SW¼ of section 13, township 12 south, range 12 west, in Bradley County, Arkansas, of which lands the appellants, Mrs. Beulah Simmons and her husband George T. Simmons, were in possession and had been for several years, claiming to be the absolute owners thereof and refusing to recognize the appellee's interest therein; that a certain decree of the Bradley Chancery Court had been fraudulently obtained by G. W. Wagnon, appellee's father, who had only a life interest in the lands, confirming and vesting title absolutely in him; that he had executed various conveyances and a will, and that appellants had executed certain instruments and conveyances, all of which were clouds on appellee's title; that appellee was entitled to a partition and immediate possession of her share of the lands, and to have the decree and instruments designated as clouds on her title canceled.

The appellee's complaint does not state a cause of action within the jurisdiction of the chancery court. The appellee cannot have partition of lands in equity of

which appellants are in possession, holding adversely to the appellee and denying her title. Nor can the appellee invoke a court of chancery to confirm or quiet title in her to lands of which the appellants are in the exclusive possession, claiming title adversely to her. Section 8362, C. & M. Digest. A court of equity has no jurisdiction to determine that one who is claiming under a purely legal title has such title and the right of possession against one who is already in possession claiming the legal title thereto, and holding the same adversely against all the world. If the appellee's complaint had stated any grounds of purely equitable jurisdiction wholly distinct from and independent of her suit for partition, or for confirmation of her title, then the court of chancery, having jurisdiction for one purpose, would retain it for all. But, after a careful analysis of appellee's complaint, we do not discover that it alleges any ground of purely equitable cognizance independent of her suit for partition and to quiet title. On the contrary, the appellee's complaint does not allege any equitable title in the appellee or any grounds whatever to justify her in invoking the jurisdiction of a court of chancery to obtain the relief which she seeks. The primary purpose of appellee's complaint is to have herself declared to be the legal owner and entitled to the partition and immediate possession of her share of the land in controversy and the rents and profits that have accrued therefrom since the death of her father in 1921. The other matters set forth for relief are subsidiary, and would be bu' ancillary to a legal title after the same had been established at law. These have no place until the legal title has been first determined at law, and they should not be given primacy merely for the purpose of defeating the jurisdiction of the law court to adjudicate the legal title and right to possession.

Conceding, without deciding, that the allegations of her complaint are true, she has a complete and adequate remedy at law, and must resort to the forum of a law court to establish these alleged rights. The doctrine

above announced has been established by a long line of decisions of this court. *Byers* v. *Danley,* 27 Ark. 77-96; *Trapnall* v. *Hill,* 31 Ark. 345; *Lawrence* v. *Zimpleman,* 37 Ark. 644; *London* v. *Overby,* 40 Ark. 155; *Criscoe* v. *Hambrick,* 47 Ark. 235; *Hankins* v. *Layne,* 48 Ark. 544-550; *Head* v. *Phillips,* 70 Ark. 432; *Eagle* v. *Franklin,* 71 Ark. 544; *Landon* v. *Morris,* 75 Ark. 6; *Cannon* v. *Stevens,* 88 Ark. 610; *Lacotts* v. *Pike,* 91 Ark. 26-29; *Hill* v. *Cherokee Const. Co.,* 99 Ark. 84-87; *Moore* v. *Jackson,* 164 Ark. 602.

3. Appellants' demurrer to the complaint, and motion to dismiss, in which the sufficiency of the complaint to state a cause of action in equity is challenged, were overruled by the court. It follows from what we have said that the court erred in these rulings. The complaint, however, does state a cause of action at law. The court therefore should have treated appellant's demurrer and motion to dismiss as a motion to transfer to the law court, and should have granted same and entered an order transferring the cause to the law court. Section 1041, C. & M. Digest; *Grooms* v. *Bartlett,* 123 Ark. 255.

For the error indicated the judgment is reversed, and the cause will be remanded with directions to enter an order transferring the cause to the law court.