LOWE *v.* COX.

4-7919                                            194 S. W. 2d 892

Opinion delivered June 3, 1946.

*L. Jean Cook* and *Frank S. Quinn,* for appellant.

*Shaver, Stewart & Jones,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, J. C. Lowe, purchased from R. H. Hanson and Stella Hanson, his daughter-in-law, a 200-acre tract of land in section 6, township 14 south, range 27 west, in Miller county. The contract of purchase was made in 1929 and a deed delivered in 1932. Appellant went into immediate possession of the lands after his purchase in 1929, and a fence was built 97.7 feet beyond the south boundary of the 200-acre tract described in his deed from the Hansons. This strip embraced 7.3 acres and is a part of the fractional north half of the north half of section 7, township 14 south, range 27 west, which was purchased by appellee, A. P. Cox, from Stella Hanson James in December, 1939.

The section line between sections 6 and 7 in township 14 south, range 27 west, forms the southern boundary of the tract purchased by appellant and the northern

boundary of the tract purchased by appellee Cox. Sections 1 and 12 in township 14 south, range 28 west, lie immediately west of sections 6 and 7 in range 27 west, but the four sections do not have a common corner and the point where sections 6 and 7 corner is 97.7 feet north of the point where sections 1 and 12 corner on the range line. This offset between the section lines was apparently responsible for Hanson's erroneous indication to appellant of a fence line by extending the section line between sections 1 and 12, in range 28, east into section 7 of range 27.

In the fall or early winter of 1942, Cox constructed a new fence on the section line between sections 6 and 7 according to the descriptions set out in the respective deeds of the parties. In November, 1943, appellant filed suit in chancery court alleging ownership of the 7.3-acre strip of land in controversy by adverse possession. It was further alleged that appellee had removed appellant's south boundary fence and had harvested a corn crop on the strip in 1943 and deprived appellant of the use of said land to his damage in the sum of $40. The complaint prayed that the deed from Stella Hanson James to Cox be canceled, in so far as it covers the strip in controversy, as a cloud upon appellant's title; that appellees be required to reconstruct the fence at its former location and enjoined from interfering with appellant's enjoyment of the land and maintenance of the fence; that upon failure to replace the fence appellant have judgment for the cost of replacing same and for damages for loss of use of the strip.

Appellees filed a demurrer to the complaint on the ground that its allegations were insufficient to state a cause of action. The court treated the demurrer as a motion to transfer to law, which was sustained, and the cause transferred to circuit court over the objections of appellant. Appellees answered in the circuit court and trial to a jury resulted in a verdict and judgment in their favor. This appeal is prosecuted to reverse the circuit court judgment.

It is first argued that the chancery court erred in transferring the cause to the circuit court. In support of this contention, appellant insists that this court, in the case of *Pearman* v. *Pearman,* 144 Ark. 528, 222 S. W. 1064, and in many more recent decisions, has overlooked the provisions of Act 74 of 1891 which gave an action to quiet title to real estate to a person, whether in actual possession or not, against an adverse claimant, whether in actual possession or not. In the case of *Pearman* v. *Pearman, supra,* Justice HART stated the rule, which has since been repeatedly cited with approval, as follows: "The equity jurisdiction to quiet title, independent of statute, can only be invoked by a plaintiff in possession, unless his title be merely an equitable one. The reason is that where the title is a purely legal one and some one else is in possession, the remedy at law is plain, adequate and complete, and an action of ejectment cannot be maintained under the guise of a bill in chancery. In such case the adverse party has a constitutional right to a trial by a jury. (Citing cases)."

It was also said in the opinion: "The action has been greatly extended by statute and in many states is the ordinary mode of trying disputed titles. Pomeroy's Equity Jurisprudence (3 Ed.), vol. 4, § 1396. Such is not the case in this state, however."

It is contended that the statement contained in the last paragraph above is inaccurate and overlooked the statute of 1891 which appellant insists was in force when the Pearman case was decided, and has been in effect since, not having been repealed. But this court held in *Lawyer* v. *Carpenter,* 80 Ark. 411, 97 S. W. 662, that Act 74 of 1891, as amended by Act 118 of 1893, was impliedly repealed by Act 79 of 1899. The Act of 1899 was carried forward into §§ 649-60, Kirby's Digest, and now appears as §§ 10958-69, Pope's Digest, except for slight amendments which are immaterial to the issues here.

It is also argued that, even though Act 74 of 1891 is not now in effect, the chancery court had jurisdiction in the instant case under the rule announced in *Sanders*

v. *Flenniken,* 180 Ark. 303, 21 S. W. 2d 847; where it was said that a suit to cancel certain conveyances as clouds upon title is of purely equitable cognizance although plaintiffs asked that title be declared in themselves, and that they have possession under their claim of title. It further appears, however, that the defendants in that case pleaded laches as a defense to the suit which the court said "is entirely a defense in equity." This brought the case within the rule announced in *Gibbs* v. *Bates,* 150 Ark. 344, 234 S. W. 175, where it was said: ". . . of course, when the defendant files a cross-bill, founded on matters clearly cognizable in equity, this supplies any defect in jurisdiction and places the court in possession of the whole case, and imposes upon it the duty of granting relief to the party entitled to it. The original bill and cross-bill then became but one cause, and a court of chancery takes jurisdiction, when allegations of the cross-bill supply the defects of the original bill. *Pearman* v. *Pearman,* 144 Ark. 528, 222 S. W. 1064, and cases cited."

Appellant also relies on the case of *Patterson* v. *McKay,* 199 Ark. 140, 134 S. W. 2d 543. There the cases of *Jackson* v. *Frazier,* 175 Ark. 421, 299 S. W. 738, and *Fisk* v. *Magness,* 193 Ark. 231, 98 S. W. 2d 958, which reaffirmed the rule announced in *Pearman* v. *Pearman,* *supra,* were reviewed. Mr. Justice BAKER, speaking for the court in that case, said: "We do not impair in any manner any announcement made in the cases cited, but the case at bar, and others of like kind, will be easily distinguishable from all those presented by appellant, as controlling authority on the propositions under consideration. The well-recognized principle that, in any proceeding wherein a plaintiff seeks to gain possession of lands held by a defendant, the remedy is by ejectment, a purely legal method to obtain possession of the land in dispute, unless plaintiff's title is an equitable one, not cognizable in a law court." And, speaking of the action by plaintiff in that case, the court also said: "Nothing. was said in his complaint that indicated his action was to any extent possessory."

Appellant, in the case at bar, says that no prayer for possession appears in his complaint. The prayer of the complaint in this connection is "that the defendants be required to reconstruct this fence at its former location; and that said defendants be enjoined from in any way interfering with the plaintiff in the enjoyment of said land belonging to him, and further restrained from interfering with the maintenance of said fence." It is doubtful that a more effective manner of obtaining possession of the strip of land in controversy could be accomplished than the method thus prayed by appellant.

The case of *Simmons* v. *Turner*, 171 Ark. 96, 283 S. W. 47, was a suit in equity for cancellation of certain instruments as clouds upon the plaintiff's title. Plaintiff asked that title be confirmed in herself and another; that the land be partitioned between them; and that plaintiff have immediate possession of her share of the lands. The demurrer and motion to dismiss of defendants were overruled by the trial court, and this court said: "A court of equity has no jurisdiction to determine that one who is claiming under a purely legal title has such title and the right of possession against one who is already in possession claiming the legal title thereto, and holding the same adversely against all the world." It was further said that the trial court should have treated the demurrer and motion to dismiss of defendants as a motion to transfer to the law court.

Appellant was out of possession and appellee was in actual pedal possession of the strip of land in controversy, and these facts were revealed by the complaint. The complaint also alleged title in appellant by adverse possession which is a purely legal title. 1 Am. Jur., p. 798. A careful analysis of the complaint convinces us that the primary purpose of this suit was to obtain possession of the tract of land. Since appellant was asserting legal title in himself, but was out of possession, his remedy at law was adequate. Appellees, being in actual possession and claiming title, had the constitutional right to insist that the issues be tried before a jury in a court of law. The chancellor, therefore, properly treated the

demurrer of appellees as a motion to transfer the cause to the circuit court.

Appellant earnestly insists that the trial court erred in refusing to grant an instructed verdict in his favor at the conclusion of the testimony. It is contended that the undisputed facts established appellant's title to the strip of land by adverse possession and that there is no substantial evidence to support the verdict of the jury. This presents the most difficult question in the case and leads us to a brief review of the evidence under the familiar rule that, in testing its sufficiency to support the verdict, such testimony must be viewed in the light most favorable to appellee.

The testimony of appellant was to the effect that no survey was made, but his grantor, Hanson, pointed out the line upon which both parties constructed the southern boundary fence. Three tenant houses were built on the disputed tract and part of the land was cultivated and occupied by tenants of appellant for more than seven years under claim of ownership. Appellant also testified that the first time he knew his deed did not include the lands, or that Cox was claiming title thereto, was when Cox built the new fence in 1942. No one else was present when Hanson pointed out the line to appellant and Hanson died before the instant suit was filed.

Appellee, A. P. Cox, testified that appellant came to him about two weeks after he purchased the property and wanted to buy the 200-acre farm. He told appellee that the line had never been straightened out between the two places and Hall (the surveyor) some way took a strip of his land. They discussed the offset and appellee told appellant of his agreement to adjust a similar offset on his south line with the adjacent owner by sharing the costs of placing a fence on the section line. Appellee made the same offer to appellant to adjust the line to the north and appellant said, "Yes, sir," but did not say whether he would or wouldn't. After appellee built the fence on the section line, appellant tried to buy the disputed strip and offered appellee $40 an acre, but he refused to sell. Cox bought a lease on appellant's farm

from the latter's tenant in January, 1943, and paid rent to appellant, but did not pay rent on the 7.3 acres in controversy. Appellant accepted the rent without objection.

Prince Beed farmed appellant's lands for at least three years and sold his lease to Cox in 1943. He testified that he was preparing to rebuild the fence when appellant told him that Cox had bought the strip and he was going over to see if he could buy it from Cox. When appellant returned he told Beed not to rebuild the old fence, that Cox was going to put the fence on the line. Beed saw Hall when the latter surveyed the lands and showed appellant the stakes Hall had placed on the section line. One or two of the tenant houses had practically fallen in when Beed left the farm and there were no tenants in the houses while he was there.

The fence constructed by appellant and Hanson consisted of three strands of barbed wire on cottonwood posts. Witnesses for both parties testified that the posts decayed within three years and that the fence was never properly maintained.

It is contended that none of the statements and acts attributed to appellant by Cox and Beed tends to show the character of appellant's possession as being permissive instead of adverse, and that a title which had already vested in appellant could not be divested by his subsequent acts and admissions. In the recent cases of *Deweese* v. *Logue*, 208 Ark. 79, 185 S. W. 2d 85, and *Sloan, et al.,* v. *Ayers*, 209 Ark. 119, 189 S. W. 2d 653, we discussed the applicable rule which was announced in *Russell* v. *Webb*, 96 Ark. 190, 131 S. W. 456, as follows: "Any act or conversation recognizing the claim of the original owner after the seven years' occupancy would tend to show that the possession held during the statutory period was not adverse. Though such testimony is not admissible for the purpose of divesting title out of the adverse occupant and revesting it in the original owner, it is perfectly admissible for the purpose of showing that the possession of the occupant was not adverse, and that the occupant did not acquire title by the possession, which

was only permissive. *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444; *Hudson* v. *Stilwell,* 80 Ark. 575, 98 S. W. 356.''

In discussing the recognition of title in another by an offer to purchase made after the running of the statutes, this court in *Shirey* v. *Whitlow, supra,* said: ''Such recognition might be evidence tending to show that the possession of the claimant was not adverse, and that no title had in fact vested. But the weight to be given to such recognition would be a question for the jury, and the court could not declare, as a matter of law, that the mere fact that defendant had recognized the title of the defendant entitled plaintiff to a judgment for possession.''

This court also said in *Butler* v. *Hines,* 101 Ark. 409, 142 S. W. 509: ''While it is true that, where title has once been acquired by adverse possession, it can not be divested by the mere recognition of another's title, such recognition might be evidence to show that the holding of the claimant was not adverse. In the present case, the character of the possession of Lynch was the all-important inquiry to which the attention of the jury was directed. Hence any act or declaration of Lynch at any time while he owned the land, tending to show that he recognized the claim of Brown to the land in dispute, was competent to show the character of his possession.'' And it was there held to be error to charge the jury that such recognition of title in another by an adverse claimant could not be considered by the jury.

Under the above authorities we think the evidence of appellant's acts and admissions, when considered in connection with the temporary character of the fence and the other circumstances in evidence, was substantial and warranted the submission of the issue of adverse possession to the jury.

The judgment of the circuit court is accordingly affirmed.