Simon ZUNAMON, Appellee,

v.

W. G. BROWN, J. P. Brown, Sr., and J. E.
(Doc) Brown, Appellants.

No. 19510.

United States Court of Appeals
Eighth Circuit.

Nov. 13, 1969.

Sam Robinson, of Robinson, Thornton & McCloy, Little Rock, Ark., for appellants; James W. Gallman, of Ball & Gallman, Fayetteville, Ark., Carl Langston, of Langston & Langston, Little Rock, Ark., and Carneal Warfield, Lake Village, Ark., were on the brief and reply brief.

W. H. Daggett, of Daggett & Daggett, Marianna, Ark., for appellee and filed brief.

Before MATTHES, GIBSON and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

In this diversity case, appellants, defendants in the district court, have appealed from the judgment awarding appellee damages in the amount of $8,921.-20, and quieting title in appellee against all claims of appellants in certain real estate.

The litigation emanates from appellant W. G. Brown trespassing upon 37 acres of land owned by appellee and situated in Chicot County, Arkansas. Appellee, a citizen of Illinois, purchased the land from the Chicago Mill and Lumber Company on June 29, 1965. Claiming ownership and possession of the land by an unbroken chain of title and continuous payment of taxes by his predecessors in title, appellee alleged in his complaint filed May 12, 1966, that W. G. Brown, in complete disregard of an explicit warning letter from appellee's attorney, had trespassed upon the land in question, cleared it completely of timber, and sold the severed lumber, all subsequent to August 30, 1965. Appellee averred that the amount of merchantable timber removed was 118,941 board feet and that the value thereof was $4,162.93. He prayed for judgment against Brown for treble that amount under the punitive provisions of Ark.Stat.Ann. § 50–105 (1947), as amended, (Supp. 1967). In addition, appellee claimed damage to the real estate in the amount of $100 per acre, thereby asserting a total damage claim of $16,188.79. He also asked the

district court to quiet title in himself as against Brown.

Brown admitted in his answer receipt of the warning letter, his entry upon the 37 acres, and the subsequent removal of the timber therefrom, but he specifically denied appellee's claim to ownership in the parcel, affirmatively asserting ownership and possession in himself. He further disputed the application of the Arkansas treble damage statute, and denied that the value of the timber removed exceeded $2,000. He prayed for dismissal of the action "and for all other relief."

On July 15, 1966, Brown moved to dismiss the action for lack of the requisite jurisdictional amount.[1] Following a pretrial hearing on October 3, 1967, an order was entered reciting:

"Pre-trial before Judge [Oren] Harris in Little Rock [Arkansas]. Argument of counsel on [defendant's] motion to dismiss; motion denied. * * "

The cause was tried on June 25, 1968. Appellee introduced evidence in conformity with the allegations of his complaint. Appellants presented, inter alia, evidence reflecting that only 69,616 board feet of timber was actually sold by W. G. Brown for $1,740.40. The district court entered judgment as stated at the outset of this opinion.[2]

## I.

The threshold question for decision is whether, as appellants contend, the district court lacked jurisdiction of the subject matter because the amount in controversy does not exceed the sum or value of $10,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

We begin with the principle that the amount claimed by plaintiff ordinarily controls in determining whether jurisdiction lies in the federal court. This was succinctly announced in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938):

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." (footnotes omitted).

It is clear, however, from the foregoing quote that the plaintiff's allegations of requisite jurisdictional amount are not necessarily dispositive of the issue. Were it otherwise, the statutory limitation would be rendered nugatory, and a patently frivolous claim could create federal jurisdiction.

---

1. After the pleadings were filed, W. G. Brown, on February 17, 1967, purportedly conveyed the 37 acres to J. P. Brown, Sr. and J. E. (Doc) Brown. By amendment, the grantees were joined as parties defendant. The additional defendants adopted the pleadings and briefs filed in the district court on behalf of appellant W. G. Brown.

2. The original of Judge Harris' judgment in the record states the money judgment in favor of appellee to be $3,700 as damages to the land and $5,121.20 as treble the value of timber severed according to appellants' evidence. We assume that the latter figure is merely a typographical error and it should read $5,221.20.

"If [the plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). See also KVOS, Inc. v. Associated Press, 299 U.S. 269, 277–278, 57 S.Ct. 197, 81 L.Ed. 183 (1936).

■ The crucial issue presented here is the *extent* of pretrial jurisdictional inquiry required by the rule of the *St. Paul* decision that the sum claimed by the plaintiff controls unless it appears to a legal certainty that this amount cannot be recovered.[3] "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." Gibbs v. Buck, 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939). See Wetmore v. Rymer, 169 U.S. 115, 18 S.Ct. 293, 42 L.Ed. 682 (1898). In appropriate circumstances the district court may determine the jurisdictional question by receiving oral testimony and other direct evidence, Gilbert v. David, 235 U.S. 561, 566, 35 S.Ct. 164, 59 L.Ed. 360 (1915), or by receiving and weighing affidavits. Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); KVOS, Inc. v. Associated Press, *supra* at 277–278, 57 S.Ct. at 200–201. But, it has also been held: "Where the

jurisdictional issue as to amount in controversy can not be decided without the ruling constituting at the same time a ruling on the merits of the case, the case should be heard and determined on its merits through regular trial procedure." Fireman's Fund Insurance Co. v. Railway Express Agency, Inc., 253 F.2d 780, 784 (6th Cir. 1958). See also Smithers v. Smith, 204 U.S. 632, 27 S.Ct. 297, 51 L.Ed. 656 (1907); Wade v. Rogala, 270 F.2d 280 (3d Cir. 1959); Williams v. Minnesota Mining & Manufacturing Co., 14 F.R.D. 1 (S.D.Cal.1953). *Cf.* Land v. Dollar, *supra*, 330 U.S. at 735, 67 S.Ct. 1009.

■ There is no one single solution to the question here presented. The scope of the pre-trial jurisdictional inquiry must of necessity turn upon the specific pleadings and facts involved in each particular case. Yet in resolving the question of the appropriateness of jurisdiction as measured by the legal certainty of plaintiff's claim, all doubts should be resolved by the district court in favor of allowing a plenary trial rather than a peremptory "trial" under the guise of an evidentiary jurisdictional hearing.

"The choice is essentially between a rule on the one hand that allows some cases involving inflated claims for relief to be brought in a federal forum in order to insure access to that forum for all those cases that properly may be brought there, and, on the other hand, a rule that closes the doors to the federal forum in the face of some claims that properly could be brought there in order to insure the denial of the forum to cases involving inflated claims. The present statutory pattern

3. The first test for dismissal on jurisdictional grounds—whether the sum claimed by the plaintiff is made in good faith—should be seen as but a linguistic variance of the second—whether it appears to a legal certainty that plaintiff cannot recover the amount demanded. For, as one commentator has noted, "unless it appears to a legal certainty that plaintiff cannot recover the sum for which he

prays, how can it be held that his claim for that sum is not in good faith?" Wright, Federal Courts, at 95 (1963). See also Jones v. Landry, 387 F.2d 102, 104 (5th Cir. 1967); Deutsch v. Hewes Street Realty Corp., 359 F.2d 96, 99 (2d Cir. 1966); Note, Determination of Federal Jurisdictional Amount in Suits on Unliquidated Claims, 64 Mich.L.Rev. 930, 935 (1966).

requires that we choose between these alternatives, [and] we feel the wiser choice is to choose the former and more liberal rule * * *. If access to federal district courts is to be further limited it should be done by statute and not by court decisions that permit a district court judge to prejudge the monetary value of an unliquidated claim." Deutsch v. Hewes Street Realty Corp., 359 F.2d 96, 100 (2d Cir. 1966) (footnote omitted).

■ With the foregoing basic guides in mind, we have no difficulty in concluding that the district court did not fall into error in not holding a full-scale pre-trial *evidentiary* hearing on the jurisdictional question. The complaint did not merely allege that the amount in controversy exceeded $10,000, which is frequently the extent of the jurisdictional allegation. It pleaded in detail that, based upon a timber cruise made shortly before severance,[4] W. G. Brown had cut 118,941 board feet of timber having an actual value of $4,162.93. The sum of that amount trebled plus the alleged $3,700 damage to the land, was $16,188.79.[5] Certainly these allegations belie any suggestion that the claim was patently spurious or colorably asserted for the sole purpose of invoking jurisdiction in the federal court. It was not legally certain that appellee could not have recovered the full amount he had claimed.

■ Moreover, the district court had before it at the time it denied appellant Brown's motion to dismiss interrogatories submitted to appellee and his verified answers thereto. These answers detailed further the course pursued by appellee in arriving at the amount claimed in his complaint, and they were equivalent to an affidavit in support of his claim.

■ Appellants would have us determine the amount in controversy by hindsight, that is, by the amount of the judgment rendered after trial on the merits. But such is not the law. Jurisdiction is measured by the amount properly pleaded or as of the time of the suit, not by the end result. St. Paul Mercury Indemnity Co. v. Red Cab Co., *supra;* Straf v. Colonial Factors Corp., 273 F.2d 554, 557 (8th Cir. 1960). Clearly, this is the type of case where the issues relating to the amount in controversy were so commingled with the merits that final disposition was properly deferrable to the trial itself.

In summary, we hold that the district court was vested with jurisdiction and properly entertained the action.

## II.

Appellants also contend that appellee failed to prove actual possession in himself of the disputed 37 acres. They maintain that the sum of the evidence, including appellee's, showed that as of initiation of this suit, appellant W. G.

---

4. The forester in the employ of Chicago Mill and Lumber Company making the timber cruise described in his trial testimony the process involved. Proceeding from north to south on the 37 acres, a series of sample areas are selected. For every five chains—a unit of distance employed in the forestry trade—a strip of land one chain wide is selected and all the merchantable trees in the strip are tallied. The result is called a 20 percent strip cruise of the timber.

5. In the briefs supporting and opposing appellant W. G. Brown's motion to dismiss, the sole issue raised was the legal viability of utilizing the Arkansas treble damage statute to create jurisdiction in a federal court. This issue is again pre-

sented here, though not with such vehemence as below. The claim can be disposed of in short order. Where the applicable state law allows, bona fide claims for punitive or exemplary damages may be considered in determining jurisdictional amount in controversy. Bell v. Preferred Life Assurance Society, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); Peacock & Peacock, Inc. v. Stuyvesant Insurance Co., 332 F.2d 499 (8th Cir. 1964); Greene v. Keithley, 86 F.2d 238 (8th Cir. 1936); *cf.* Ringsby Truck Lines, Inc. v. Beardsley, 331 F.2d 14 (8th Cir. 1964). The *applicability* of the treble damage statute to the instant facts was a question closely intertwined with the merits and was properly deferred until trial.

Brown was in actual possession of the parcel by virtue of his acts in clearing and fencing the land. Citing Arkansas case law, *e. g.,* Calvert v. Haley, 218 Ark. 752, 238 S.W.2d 664 (1951); Gibbs v. Bates, 150 Ark. 344, 234 S.W. 175 (1921), appellants conclude that the district court thereby exceeded its authority in granting equitable relief in the form of quiet title. It is significant to note that appellants are not directly challenging the propriety of the district court's conclusion that appellee owned the property involved. Their position here is only that Arkansas law limited the appellee's remedy to a legal action for ejectment in the absence of proof of actual possession. They would have us reverse solely on this ground.

At the trial below, both parties offered evidence on the issue of ownership of the 37 acres—the appellee in order to establish his right to recover actual and treble damages and to quiet title, and the appellants in order to establish a defense to the damage question and in support of their demand for affirmative relief. On the basis of the evidence presented, the district court entered findings of fact and conclusions of law. While possession of the land was implicitly involved in the damage issue, no specific finding was made that appellee was in possession of the land. Indeed, appellants failed to directly raise the possession issue in the context of appellee's right to a remedy of quiet title.

■ Initially, we are unsympathetic to appellants' contention in light of their failure to raise it in the trial court. The law is quite clear that legal issues not raised in the trial court will not generally be considered for the first time by the reviewing court.

"We do not try cases de novo. Unless the legal issues are properly raised below, we will not be concerned except in extraordinary cases, and then only to avoid a clear miscarriage of justice." Ralston Purina Co. v. Parsons

Feed & Farm Supply, Inc., 364 F.2d 57, 60 (8th Cir. 1966).

*See also,* Skogen v. Dow Chemical Co., 375 F.2d 692 (8th Cir. 1967); Ford v. Boeger, 362 F.2d 999 (8th Cir.), cert. denied, Grand v. Boeger, 386 U.S. 914, 87 S.Ct. 857, 17 L.Ed.2d 787 (1966).

■ This is not an instance where failure to consider the alleged error will result in a "miscarriage of justice." The crucial substantive dispute between the parties concerned legal title to the 37 acres of land. The district court fully considered that question and resolved it in favor of appellee. Appellants do not contend here that the conclusion was erroneous. That appellee may have proceeded under an incorrect form of action hardly constitutes a "miscarriage of justice," particularly in light of appellants' apparent acquiescence preceding and during the trial itself. Moreover application of this rule to the instant case is particularly appropriate, since the issue appellants now seek to have considered is not clearly resolved under existing Arkansas law.[6] In this circumstance Judge Harris, who is eminently qualified to interpret the law of Arkansas, should have been afforded the opportunity to consider the question. *See, e. g.,* Billings v. Investment Trust of Boston, 309 F.2d 681 (8th Cir. 1962). We thus do not believe that we are now required to recognize the alleged error of the trial court in quieting title in appellee.

Furthermore, we conclude that an affirmance is proper on an alternative ground.

■ In federal courts under Rule 2 Fed.R.Civ.P., there is but one form of action—the civil action—and all procedural distinctions between law and equity have been abolished. Myzel v. Fields, 386 F.2d 718, 741 (8th Cir. 1967); Groome v. Steward, 79 U.S.App. D.C. 50, 142 F.2d 756 (1944); 2 J. Moore, Federal Practice ¶ 2.02(1) (2d ed. 1953). And where the district court

6. *See* Covington, Bills to Remove Cloud on Title and Quieting Title in Arkansas, 6 Ark.L.Rev. 83 (1952).

has jurisdiction over the subject matter it has the power to afford the parties relief to which they are entitled on the facts, applying rules of *both* law and equity. *Id.*, C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1043 (1969). Where jurisdiction is premised on diversity of citizenship it is of course axiomatic that the federal district court is required to apply state substantive law and federal procedural law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This rule applies to state equitable as well as legal rules. Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290 (1938). Accordingly, to the extent that distinctions in Arkansas between an action in ejectment and an action to quiet title are substantive, the federal court is bound to recognize them; to the extent that they are procedural, it must ignore them.

Arkansas cases stand for the proposition that the purpose of the possessory requirement in a plaintiff's action to quiet title is to protect the defendant's constitutional right to trial by jury. *See, e. g.,* Patterson v. McKay, 202 Ark. 241, 150 S.W.2d 196 (1941); Pearman v. Pearman, 144 Ark. 528, 222 S.W. 1064 (1920). It is reasoned that where the defendant is in possession of the disputed land, the plaintiff has an adequate legal remedy—ejectment. To extend equitable relief to the plaintiff in such circumstances would deprive defendant of a jury trial. Thus the primary substantive difference, and the only one relevant to this case, between the legal action of ejectment and the equitable action of quiet title, in the context of Arkansas' requirement that plaintiff be in possession of the land, is that defendant's right to a jury trial is protected in the former action. It follows that this substantive right, subject to the requirements of the Constitution, must be recognized by a federal court exercising diversity jurisdiction. Humble Oil & Refining Co. v. Sun Oil Co., 191 F.2d 705 (5th Cir. 1951); Payne Land & Livestock Co. v. Archuleta, 180 F.Supp. 651 (D.C.N.M.1960). However, under Rule 38(d) Fed.R.Civ.P., the right to a jury trial in a federal court may be waived. Here, appellants never demanded a jury trial. Indeed, they proceeded as if they themselves desired affirmative equitable relief. Thus, appellants waived their right to trial by jury.[7] Therefore, appellants' claim that appellee's theory of recovery was incorrect rings hollow now when they themselves have waived the right to the only substantive difference between the two theories relevant to the instant case.

Affirmed.

7. It is significant that Arkansas law also recognizes that the requirement of possession in plaintiff as a *sine qua non* to an action to quiet title may be waived by the defendants. Where the defendant asks for equitable relief in the form of a cross-bill, he is deemed to have waived his objection to plaintiff's lack of possession and the court's resulting lack of jurisdiction to entertain the suit. Good- rum v. Ayers, 56 Ark. 93, 19 S.W. 97 (1892). Although we need not reach a definite answer, it can be persuasively argued under Arkansas law that appellants waived their right to object. to appellee's theory of recovery by seeking "all other relief," by defending on the basis of their own claim to ownership, and by failing to object to the "equitable" character of the proceedings.