Owen YANDELL and his wife *v.*
HAVANA BOARD OF EDUCATION
et al

Roland GORMAN et al *v.* HAVANA
BOARD OF EDUCATION et al

79-76 & 79-130                                   585 S.W. 2d 927

Opinion delivered September 10, 1979
(In Banc)

*Witt & Donovan,* for appellants.

*Eugene R. Warren,* for appellees.

GEORGE ROSE SMITH, Justice. On August 7, 1978, two companion suits were filed by patrons of Havana School District No. 86 against the District's board and four of its five members. The complaint in one case was filed in the circuit court and alleged that the Board had violated the Freedom of Information Act at a meeting held on July 31 and that the meeting should be declared void. After a trial without a jury the circuit court found that there had been no violation of the Act and dismissed the complaint. The plaintiffs appeal, contending that the testimony showed a violation of the Act and that an amendment to the complaint should have been permitted on the day of trial.

The complaint in the second case was filed in the chancery court and alleged that the Board, at one or more of its meetings, had violated both the FOI and its own administrative policies. The complaint asked that the Board be permanently enjoined from holding further meetings not in compliance with the FOI and the Board's administrative policies. The Board filed an answer denying the court's jurisdiction and the allegations of the complaint. The chancellor held, upon the pleadings, that the court had no jurisdiction and dismissed the suit. For reversal the plaintiffs argue that their complaint stated a cause of action within the jurisdiction of a court of equity.

The two appeals have been consolidated in this court. We consider first the circuit court case, in which the issues were decided on the merits.

The complaint in circuit court asked that the Board's

meeting on July 21 be declared void, because the Board in executive session considered or arrived at a motion or resolution specifying four charges against Dr. Barham, the school superintendent, but the Board did not follow up its action by reconvening in public session and voting on the measure, as required by the FOI. Ark. Stat. Ann. § 12-2805 (Supp. 1977). To this contention the Board replies that it did not take the asserted action at its executive session and therefore was not required to publicly ratify any such action. We regard the issue as one of fact, upon which there is ample substantial evidence to support the trial court's finding that no violation of the FOI occurred.

The president of the Board called the meeting to consider "a serious personnel (superintendent) problem." Notice of the meeting was given to the board members and to the Yell County Record, a weekly newspaper. Several hundred patrons of the district attended the meeting. The Board promptly went into executive session to consider complaints that had been made against Dr. Barham. Dr. Barham objected at the time to the closed session, but there is no argument in this court that the Board was not entitled under the statute to consider a personnel matter in executive session. § 12-2805, *supra*. Dr. Barham, his two attorneys, and the attorney for the Board met with the Board in the executive session. The complaints were discussed for about an hour and a half, after which Dr. Barham and the three attorneys were excused. The five-member Board then discussed the matter for some 45 minutes. After that the Board resumed its public session and by a vote of four to one adopted a motion that Dr. Barham "be given a hearing" on August 4. On the day after the meeting the president of the Board sent a letter to Dr. Barham (with a copy to the newspaper), listing four charges against him. We do not know just what the charges were, as they are not included in the record.

The FOI provides that no resolution or motion "considered or arrived at in executive session will be legal unless following the executive session, the public body reconvenes in public session and presents and votes on such resolution . . . or motion." § 12-2805, *supra*. Thus the issue is whether the Board, in its executive session, considered or arrived at the

specific charges that were filed against Dr. Barham.

All five board members testified about what happened in the executive session. Mr. Vess said that no resolution or motion specifying the charges was considered or arrived at. He said the matter was discussed but not voted on, and that there was no tacit understanding that a letter with the charges would be sent to Dr. Barham. Mr. Frame testified that there was no motion in the executive session concerning the charges, that the Board did not pinpoint what the charges would be, and that he did not understand what they were to be. Mr. Tougaw said that the charges had been listed in the executive session. Mr. Mitchell said that the allegations against Dr. Barham were discussed, but not the charges to be filed. Mr. Welch, president of the Board, testified that he signed the letter preferring the charges without the Board's specific approval, but it had been understood by the Board what would be done.

The circuit judge was certainly warranted in finding from the varying testimony that complaints against Dr. Barham were discussed, but that the Board did not "consider or arrive at" the specific charges. That the president of the Board may have prepared specific charges on his own initiative the following day could perhaps have been raised by Dr. Barham (who is not a party to these cases) as an objection at the hearing on August 4, but the trial court was not compelled to find that the FOI had been violated. All that Act requires is that a resolution or motion actually considered or arrived at in executive session be publicly ratified if it is to be legal. The purpose of the FOI is to protect the public's right to information, not to specify what action shall be taken in an executive session on a personnel matter.

Inasmuch as the circuit court was justified in finding that the FOI had not been violated, we need not consider whether the court should have permitted the plaintiffs to amend their complaint on the day of trial to seek alternative relief by injunction. No violation of the FOI having been found, there could be no basis for an order enjoining the Board from future violations of the Act. The denial of leave to amend was at most harmless error. The circuit court judgment is affirmed.

In the chancery case the parties and the chancellor treated the defendants' challenge to the court's jurisdiction as a contention that any cause of action stated in the complaint should have been asserted in an action in the circuit court. The chancellor's order dismissing the complaint was in effect a denial of jurisdiction in equity as distinguished from jurisdiction at law.

The complaint first alleges that at one or more meetings the Board violated its own administrative policies by (1) considering items not on the agenda and voting on them without unanimous consent, (2) failing to allow the public to address the Board at a public meeting, and (3) failing to proceed according to Robert's Rules of Order. A deliberative body, however, is entitled to adopt its own rules of internal procedure, the observance of which is within the discretion of the deliberative body itself, free from supervision by the courts. See *Reaves* v. *Jones,* 257 Ark. 210, 515 S.W. 2d 201 (1974). Hence this part of the complaint does not state a cause of action at law or in equity.

The complaint also alleges two violations of the FOI. The first is the same matter that was tried on its merits in the circuit court. That case has now settled the issue, for the Board is not required to defend two representative suits arising from the same incident.

The second assertion is that the president of the Board, with the acquiescence of three other members, called a special meeting for July 18 and directed the superintendent not to notify the public or the press. Such a directive would violate the FOI, because the Yell County Record had asked to be notified of special board meetings. § 12-2805, *supra.*

The chancellor, in dismissing the complaint, in effect tested the complaint as if on demurrer and concluded that no equitable cause of action was stated. The allegation, however, that a special meeting had been called without notice to the press may be regarded as stating a cause of action at law, for a declaratory judgment. In that event the chancellor should have transferred the case to the circuit court instead of dismissing it. *Simmons* v. *Turner,* 171 Ark. 96, 283 S.W. 47 (1926).

Moreover, even if no cause of action at all had been stated, the case should not have been dismissed without the plaintiffs' having been afforded an opportunity to amend their complaint. Ark. Stat. Ann. § 27-1117 (Repl. 1962); *Robertson v. Robertson,* 227 Ark. 978, 302 S.W. 2d 810 (1957).

The chancery decree is therefore affirmed in part and reversed in part, and the cause is remanded to permit the plaintiffs to proceed further if they so desire.

PURTLE, J., concurs in part, dissents in part.

JOHN I. PURTLE, Justice, concurring in part, dissenting in part. I concur with the majority in reversing the chancery court decree but disagree with affirmance of the judgment of the circuit court. This whole affair appears to be a matter of conflict over personalities. However, before a board terminates its superintendent of schools I feel that he should be afforded all procedural and substantive due process. The Board of Directors for a school district are the employees of the people in the district in a sense. The school does not belong to the directors, they are merely managing it on behalf of the people in the district. In the present case it appears that on the critical meeting date about 300 people were present with the hope and expectation that they would at least see what their Board was doing and hopefully be permitted to express their views in the matters considered by the Board. The Board rebuffed them in their efforts.

Perhaps the tone of the whole series of meetings was established when the president of the Board called the first special meeting on July 18, 1978, and directed the superintendent not to notify the public or the press about the meeting. I view with suspicion any action taken by a Board following such directive. Nevertheless, when the Board met on July 31, 1978, the first item of business was a motion to go into executive session. The motion did not carry unanimously as required by the Board policy. In this session it is obvious that the Board determined its subsequent course of action in terminating the employment of Dr. Barham. Although there were no minutes of the executive session reflecting any official action and no action was taken after the meeting was resum-

ed in public, it is obvious that a decision was made by at least some of the Board members in executive session. Dr. Barham's attorneys pleaded with the Board to make the charges against Dr. Barham public but were unsuccessful. The following day the president of the Board mailed Barham a letter stating specific charges. All Board members subsequently stated that this letter was not approved by the other members, either in executive or public session. Therefore, in my opinion, these charges, whatever they were, were the personal charges of the president of the Board and since the Board did not take action on the charges they were never officially before the Board.

It is entirely possible that if the Board had taken the public into its confidence and revealed to them the nature of the charges and the action taken thereon these suits would not have been filed. In view of the open violation of the Freedom of Information Act and the strongly suspect action taken in executive session, I would declare the meeting to have had no legal effect and would require the Board to redo its action in a manner consistent with the statements herein.