The Honorable Gilbert Baker State Senator #17 Cooper Lane Conway, Arkansas 72034-7935
Dear Senator Baker:
I am writing in response to your request for an opinion on the following issue:
 A vacancy is about to occur in the City of Vilonia Water board. It is my understanding that the procedure for filling a vacancy to the board is as follows. First, the members of the water board solicit names from the community of those who are interested in filling the vacancy. Next, the board selects three names from those turned in and submits them to the Mayor. The Mayor then selects one name from the list and presents it to the City Council for approval. If approved by the City Council, this person becomes the new water board member. Recently the Mayor selected a name to submit to the City Council to fill a vacancy on the water board. Although the Mayor inadvertently left the name of the nominee off the agenda of the meeting the Council was to vote on a nominee to fill the vacancy, a Council member moved to accept the nominee. However, no second to the motion was made and the Council did not vote on the nominee. Can this same nominee be submitted again and voted on by the Council? Does the City Council have authority to appoint a member to the water board?
RESPONSE
It is impossible for me to answer these questions without reference to the legal provisions under which the water board operates. There are a number of different statutory subchapters that govern the operation of such boards, each containing distinct provisions. In addition, uncodified local or special acts, which may still be operative, were passed many years ago to govern the issue in particular cities. Finally, the Arkansas Supreme Court has stated that such boards may be created by municipalities independently of statutory authority. You have not stated the nature of the water board in question. I thus cannot come to any definitive conclusions without information concerning the applicable law. I have set out some discussion of the pertinent statutes and law below, however. City officials should consult with their city attorney to determine the issue as it applies to the particular facts in Vilonia.
I will state, however, that to the extent your questions refer to a "public facilities board" created pursuant to A.C.A. §§14-137-101 to -123 (Repl. 1998 and Supp. 2005), which may be the case from your recitation of the facts, in my opinion the applicable statute in that subchapter (A.C.A. § 14-137-108), does not control the answer to your first question. The answer to your first question is, rather, dictated by principles of parliamentary procedure. A board may adopt its own procedure in this regard. It is therefore impossible for me to opine conclusively on the matter. Standard rules of parliamentary procedure, which may or may not have been adopted by the Vilonia City Council, indicate that a motion made, but not seconded, does not place the issue before the legislative body, and is therefore not regarded as a "no" vote. Again, if the applicable statutory subchapter is A.C.A. §§ 14-137-101 to -123, in my opinion the answer to your second question is "no." The mayor has the power of appointment under that statute, and the city council the power of approval.
Question 1 — Can this same nominee be submitted again and votedon by the Council?
Several subchapters of the Arkansas Code address the creation and operation of municipal water boards or commissions. For example, A.C.A. §§ 14-201-101—129 (Repl. 1998 and Supp. 2005), first adopted in 1957, authorizes the creation of a "utility commission" in cities of the first class to operate a municipal waterworks system. It provides for the appointment of five members by the mayor, each confirmed by a 2/3 vote of the city council. A.C.A. § 14-201-105(b) (Supp. 2005). Vacancies on such commission are filled "by the mayor appointing a person to fill the unexpired term . . . subject to approval of two-thirds (2/3) of the city council." A.C.A. § 14-201-105(e) (Supp. 2005). Subchapter two of the same chapter, A.C.A. §§ 14-201-201—208 (Repl. 1998), first adopted in 1953, also applies to cities of the first class and authorizes them to create a five-member commission to operate a water plant. A.C.A. § 14-201-204. The members are popularly elected in the same manner as the mayor of the city. A.C.A. § 14-201-204(b)(2). Vacancies are filled by appointment of the city council, the appointee to serve until the next city election, at which a successor will be elected, unless the ordinance creating the commission provides for a different method of filling vacancies. A.C.A. § 14-201-204(d).
For cities of the second class and incorporated towns, A.C.A. §§14-201-301 to -330 (Repl. 1996), first adopted in 1939, provides for the creation of a "board of public utilities" in those cities where water plants were formerly owned by improvement districts, but have been "paid out" and are now under control of the city or town. A.C.A. § 14-201-302(a). The five-member board is elected by real estate owners in the affected area (A.C.A. § 14-201-307), and vacancies are filled by the remaining members of the board. A.C.A. § 14-201-318.
In addition, such water commissions may be created pursuant to the provisions of A.C.A. §§ 14-234-101 to -122 (Repl. 1998 and Supp. 2005); and A.C.A. §§ 14-234-301 to -310 (Repl. 1998 and Supp. 2005). Each subchapter applies to both cities of the first and second class. The latter, adopted in 1937, hinges the number of members on the commission on the classification of city and its population. A.C.A. § 14-234-303 (Supp. 2005). Vacancies on such commission are filled by remaining members, subject to approval by a 2/3 vote of the city council. A.C.A. § 14-234-304
(d).
As noted previously, the applicable law in a given city may consist of an uncodified special or local act, adopted before such acts were prohibited. See generally, Arkansas Constitution, Amendment 14; A.C.A. § 14-201-101(c) (Repl. 1996); A.C.A. § 14-201-301 (Repl. 1996); and A.C.A. § 14-234-301(a) (Repl. 1996). I am unaware of whether any such local act exists for the City of Vilonia.
Finally, the Arkansas Supreme Court in Adams v. Bryant,236 Ark. 859, 370 S.W.2d 432 (1963), stated that a second-class city wishing to provide for governance of its water distribution system did not have to follow the provisions of A.C.A. §§14-201-301 to -330, and could instead create an agency through ordinance to operate the utilities. Id. at 862-863.
Because you have not stated under which law the board in question was created, I am uncertain which, if any, of the these provisions of law may be applicable to your question. I therefore cannot conclusively determine the answers to your questions.
The facts you describe, however, may indicate that none of the provisions discussed above are applicable and that the Vilonia water board in question is a "public facilities board" created pursuant to the provisions of A.C.A. §§ 14-137-101 to -123 (Repl. 1998 and Supp. 2005). Again, I cannot determine the issue without the applicable facts. The last-mentioned subchapter authorizes the creation of such boards by municipalities to, among other things, own and operate waterworks facilities. A.CA. § 14-137-106
(Repl. 1998). Vacancies on the board are governed by A.C.A. §14-137-108 (Supp. 2005), which provides as follows:
 (a)(5)(A) In the event of a vacancy in the membership of the board, however caused, the mayor or the county judge shall appoint a successor member nominated by a majority of the board to serve the unexpired term, subject to confirmation by the governing body of the municipality or county.
 (B) The board shall submit a written list of three (3) nominees to fill the vacancy to the mayor or the county judge not later than sixty (60) days after the vacancy occurs.
 (C) If the board fails to submit a written list of nominees not later than sixty (60) days after the vacancy, the mayor or the county judge may appoint a successor member without a nomination from the board.
You have stated that the "Mayor selected a name" to submit to the council. I assume that this means the Mayor may have "appointed" a person under A.C.A. § 14-137-108 (a)(5)(A) to fill the vacancy and thereafter confirmation of the appointment by the city council was needed. This point is not made clear from your recitation of the facts, however. The determination of what occurred factually may be all important to the determination of the issue. You state that the matter of confirming an appointee was not listed on the agenda of the city council meeting at issue. You also state that the issue was nonetheless raised by motion of one of the alderman. You state that the motion was not seconded, but do not state what happened procedurally after that point, except that the "Council did not vote on the nominee." Your first question is whether this same "nominee" can be submitted again and voted on by the Council. You are apparently concerned about whether the failure of a council member to "second" the motion to accept the appointee resulted in a rejection of the appointee, such that his confirmation may not again be considered by the city council.
You have not stated whether the city council adheres to any local rules of parliamentary procedure with regard to the conduct of its meetings. I thus cannot fully address this question without knowing the substance of such rules. As I stated in Op. Att'y Gen. 2004-326:
 My predecessors have opined that, in the absence of local procedural rules, the general rules of parliamentary procedure apply. See, e.g. Op. Att'y Gen 98-282; Op. Att'y Gen 95-152 (citing 62 C.J.S. Municipal Corporations § 400(a) (1949)); and 62 C.J.S. Municipal Corporations § 232(a) (Supp. 2004).
General rules of parliamentary procedure, such as ROBERT'S RULES OF ORDER, may thus govern the issue in the absence of any local rules.
With regard to the failure to "second" a motion, ROBERT'S RULES OF ORDER states in pertinent part:
 The requirement of a second is for the chair's guidance as to whether he should state the question on the motion, thus placing it before the assembly. Its purpose is to prevent time from being consumed by the assembly's having to dispose of a motion that only one person wants to see introduced.
 * * *
 If no member seconds the motion, the chair must be sure that all have heard it before proceeding to other business. In such case the chair normally asks, "Is there a second to the motion?". . . . If there is . . . no second, the chair says:" The motion [or resolution] is not seconded"; or, "Since there is no second, the motion is not before this meeting."[1] Then he immediately says, "The next item of business is . . ."; or, if appropriate, "Is there any further business?"
ROBERT'S RULES OF ORDER NEWLY REVISED ("RONR") (10th Ed.) p. 35 l. 13-15, and p. 34 l. 13-26.
There are three steps by which a motion is brought before an assembly — the making of a motion, the seconding of a motion and the stating of the question by the chair. See Id. at p. 31, l. 9-24. The seconding of a motion "merely implies that the seconder agrees that the motion should come before the meeting and not that he necessarily favors the motion. A member may second a motion . . . because he would like to see the assembly go on record as rejecting the proposal, if he believes a vote on the motion would have such a result." Id. at p. 34-35, l. 27-32, 1.
When a motion is made and seconded, the chair formally places it before the body by "stating the question." Id. at p. 36, l. 6-9. "Neither the making nor the seconding of a motion places it before the assembly; only the chair can do that, by the third step (stating the question)." Id. at p. 31, l. 25-27.
It appears that these passages indicate that a failure to second a motion has no operative effect except to preclude its consideration at that meeting. Generally speaking a parliamentary body may only address the topic of a motion once in a given meeting. See, e.g., Robert's Rules of Order Newly Revised (10th Edition) ("RONR"), pg. 325, l. 6-12; and Op. Att'y Gen. 2006-034. Although an alderman, as you have stated, "moved to accept the nominee," without a second and the stating of the question, the motion was not placed before the council. As you have noted, there was no vote on the confirmation of the appointee.
The effect of the failure of this motion to receive a second is to deny the appointee a vote on confirmation of his appointment. This would seem to have the same practical effect as an actual "no" vote denying confirmation of his appointment in that in either event, he is not approved by the council for the office. The relevant distinction, for purposes of your question, between the failure to even take up the question and an actual "no" vote, relates to how or whether the approval of the appointee may be raised again before the council.[2] This is a matter of parliamentary procedure. In my opinion, because the council simply did not take up the matter of the approval of the appointee, he has not technically been rejected by the council. I cannot find any prohibition in A.C.A. § 14-137-108 or in general rules of parliamentary procedure that would prohibit the submission of his name to the council at a later meeting.
In any event, it has been stated that the observance of rules of internal procedure is a matter within the discretion of the deliberate body itself and is not subject to review by the courts. See e.g., Yandell v. Havana Board of Education,266 Ark. 434, 585 S.W.2d 927 (1979) (school board's consideration of items not on the agenda and failure to follow Robert's Rules of Order did not state a cause of action at law or in equity because a deliberative body is entitled to adopt its own rules of internal procedure, the observance of which is within the discretion of the deliberative body itself, free from supervision by the courts, citing Reaves v. Jones, 257 Ark. 210,515 S.W.2d 201 (1974)). See also, O'Brien v. City of Greers Ferry,293 Ark. 19, 732 S.W.2d 146 (1987) (failure of a motion and a second to the nomination by mayor of successors to fill vacancies in alderman and recorder offices did not invalidate city council vote; statutes did not require such procedure and as long as the appointees received majority vote, the lack of a formal motion and a second did not render their appointment illegal).
In my opinion, therefore, the city council is free to conduct its proceedings in accordance with its own rules and is not necessarily prohibited from consideration of this appointee at another council meeting.
Question 2 — Does the City Council have authority to appoint amember to the water board?
The answer to this question will depend upon the applicable law, which again, I cannot determine conclusively from the facts presented. Assuming the applicable law is A.C.A. §§ 14-137-101 to -123, which governs "public facilities boards," in my opinion the answer to your second question is "no," the city council has only the power of confirmation, not of appointment. The mayor retains the power of appointment, from a list provided by the public facilities board (assuming that board meets the applicable sixty-day time limit).
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
 MIKE BEEBE Attorney General
MB:ECW/cyh
[1] A second is not required for a nomination. ROBERT'S RULES OF ORDER NEWLY REVISED ("RONR," p. 418, XIV 46. At issue with regard to your request is not a nomination, however (assuming A.C.A. § 14-137-108 is the applicable statute), but the confirmation of a mayoral "appointee." You have referred in your recitation of the facts to the individual in question as a "nominee." I will note, however, that if A.C.A. § 14-137-108 is the applicable statute, it contemplates an actual appointment by the mayor of one of the three nominees proposed by the public facilities board, which mayoral appointment must then be confirmed by the council. After selection by the mayor, the individual is properly referred to as an "appointee" and not a "nominee."
[2] Because there was not a vote denying confirmation, it is not necessary to discuss any applicable procedure to resubmit such an appointee for the council's approval.