2012 Ark. App. 231

**CAPSTONE OILFIELD DISPOSAL OF ARKANSAS, INC., Appellant**

v.

**POPE COUNTY, Arkansas; Arnold Bowden; Dusty Hampton; Connie Aday; and Kenneth Bowden, Appellees.**

**No. CA 11–1087.**

Court of Appeals of Arkansas.

April 4, 2012.

Rehearing Denied May 9, 2012.

Robert M. Honea, Hardin, Jesson & Terry, PLC, Fort Smith, for appellant.

Robert M. Veach and Richard L. Peel, Peel Law Firm, P.A., Russellville, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Capstone Oilfield Disposal of Arkansas, Inc. ("Capstone"), appeals the August 9, 2011 decision of the Pope County Circuit Court that reversed the decision of the Arkansas Oil and Gas Commission ("AOGC") to grant Capstone a permit to operate a Class II UIC commercial disposal well. Capstone asserts that the circuit court erred because (1) appellees' argument was not properly raised before the AOGC; (2) this was a matter of internal procedure, and the AOGC was entitled to adopt its own procedural rules free from supervision by the courts; and (3) the AOGC's interpretation of its own regulations was reasonable and should have been upheld. We affirm the circuit court's reversal of the AOGC's decision.

Capstone filed an application for the issuance of a permit to operate a Class II UIC commercial disposal well on August 5, 2009. Written objections to Capstone's application were made a part of the record at an October 28, 2009 hearing. One citizen of Pope County, Connie Aday, wrote to the AOGC requesting that it deny Capstone's permit because Capstone had not demonstrated its ability or assurance to meet its financial obligations. Specifically, Ms. Aday stated that her concerns were that she raised chickens and cattle and wanted to know how payment would be made in the event she needed to file a claim against Capstone. Dustin Hampton, a member of the Pope County Quorum Court and a citizen of Pope County, appeared before the AOGC and expressed his concerns over Capstone's history of financial irresponsibility. Mr. Hampton presented evidence that Capstone had received multiple violations from the Arkansas Department of Environmental Quality and the AOGC in which it was sanctioned, and he wanted to make certain there was an adequate bond posted in the event that Capstone's August 5, 2009 permit application was granted. Mr. Hampton made it clear that Capstone was irresponsible in its actions and "has had to have its feet held to the fire on every little detail of its business." Capstone's August 5, 2009 application was denied following the October 28, 2009 hearing in an order dated November 12, 2009.

Capstone filed its second application for the issuance of a permit on or about November 12, 2009, and it is undisputed that evidence of financial assurance was not filed with that application as required by AOGC Rules H–1 and Rule B–2. Objections were again received to the application, and on November 30, 2009, the AOGC denied Capstone's November 12, 2009 application, in part, because "financial assurance in the amount of $50,000.00 has not been filed." Capstone requested that the denial of its November 12, 2009 application

be heard by the full AOGC, and a hearing was held on December 9, 2009. Evidence from the October 28, 2009 hearing, including Ms. Aday's and Mr. Hampton's objections, was incorporated into and made a part of the December 9, 2009 hearing. It is undisputed that financial assurance had not been filed prior to the December 9, 2009 hearing.

The AOGC made a motion to continue the hearing until a further date, and a final hearing on Capstone's November 12, 2009 application occurred on February 23, 2010. It is undisputed that financial assurance had not been filed at this point. At that hearing, everything from the December 9, 2009 hearing was incorporated into and made a part of the February 23, 2010 hearing, specifically including the objections of Ms. Aday and Mr. Hampton. Following the February 23, 2010 hearing, the AOGC approved Capstone's permit application on March 18, 2010. It is undisputed that at the time the permit application was granted, more than sixty days had passed since the November 12, 2009 permit application was first filed and that Capstone still had not posted its financial assurance.

Appellee, Pope County, Arkansas, subsequently filed its petition for review in the Circuit Court of Pope County, Arkansas, pursuant to the Arkansas Administrative Procedures Act, Arkansas Code Annotated section 25–15–212 (Repl.2002). Other appellees filed their own petitions for review, and following the filing of a joint motion to consolidate, the circuit court entered its order consolidating the cases herein. Appellee, Pope County, Arkansas, filed its motion for summary judgment, asserting the AOGC erred by issuing Capstone its permit without having first submitted financial assurance, as required by Rules H–1 and Rule B–2. Following a review of the parties' briefs and arguments of counsel at a hearing on March 11, 2011, the circuit court found that the AOGC failed to comply with its own rules and reversed the AOGC's order granting Capstone its permit. Capstone eventually provided the required financial assurance in the form of a $50,000 irrevocable letter of credit by letter dated March 29, 2010. Based on the undisputed facts, Capstone submitted the required financial assurance 137 days after filing its application, 119 days after it was advised its application would be deemed denied if not cured within sixty days, and over thirty days after the adjudicative hearing on its application.

After considering the briefs and arguments of the parties, the circuit judge entered a final order on August 9, 2011, finding that the AOGC's approval of Capstone's application "was in violation of the AOGC's own regulations, because too much time had passed without Capstone providing proof of financial assurance." Capstone filed a notice of appeal to this court, and further filed a motion to stay enforcement of the circuit court's order pending the outcome of this appeal, on August 12, 2011. On August 18, 2011, the circuit court entered its order granting Capstone's motion and staying enforcement of its order pending the outcome of this appeal.

Our review is directed not toward the circuit court but toward the decision of the administrative agency. *Walls v. Ark. Oil & Gas Comm'n*, 2012 Ark. App. 110, 390 S.W.3d 88. Judicial review of an administrative agency's decision is limited because the agency is better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze the legal issues affecting it. *Id.* The Administrative Procedures Act provides that a court may reverse or modify an agency's order when the agency's findings, inferences, conclusions, or decisions are 1) in violation of

constitutional or statutory provisions; 2) in excess of the agency's statutory authority; 3) made upon unlawful procedure; 4) affected by other error or law; 5) not supported by substantial evidence of record; or 6) arbitrary, capricious, or characterized by an abuse of discretion. Ark. Code Ann. § 25–15–212(h) (Repl.2002). We adhere to these standards of review in analyzing the following arguments.

■ At the adjudicative hearing before an administrative agency, the party seeking an order, here, the applicant for a commercial disposal well permit, has the burden of proof. Ark.Code Ann. § 25–15–213(4) (Repl.2002). Our supreme court has held that in order to meet that burden to establish a lack of substantial evidence, an appellant must demonstrate that the proof before the administrative board was so nearly undisputed that fair-minded persons could not reach its conclusions. *Landmark Novelties, Inc. v. Ark. State Bd. of Pharmacy*, 2010 Ark. 40, 358 S.W.3d 890. The question on review is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made. *Id.*

Our supreme court has held that an administrative decision is made upon unlawful procedure if the Commission violated its own announced rules. *See Reg'l Care Facilities, Inc. v. Rose Care, Inc.*, 322 Ark. 767, 912 S.W.2d 409 (1995). Additionally, a procedure has been held to be "unlawful" when an agency fails to follow that which it has prescribed. *Stueart v. Ark. State Police Comm'n*, 329 Ark. 46, 945 S.W.2d 377 (1997).

■ Capstone initially contends that the arguments asserted by appellees in the circuit court and before this court were not raised before the AOGC. It is black-letter law that the courts will not set aside a decision of an administrative agency upon a ground which was not presented to the agency. *See Otte v. Ark. State Bd. of Acupuncture and Related Techniques*, 361 Ark. 279, 206 S.W.3d 225 (2005). While it is a correct statement of law that administrative decisions will not be reversed on grounds first raised on appeal, it is also true that administrative agencies do typically follow less formal hearing practices. *See generally* Ark.Code Ann. § 25–15–213 (Repl.2002); *see also Yandell v. Havana Bd. of Educ.*, 266 Ark. 434, 585 S.W.2d 927 (1979).

Certain individual appellees, including Ms. Aday and Mr. Hampton, are private citizens of Pope County who were unrepresented by counsel at the hearings. Although appellees acknowledge they did not recite the formal requisites of a court objection during the relatively informal proceedings, the evidence does indicate that (1) the rules required that the bond be posted; (2) the commissioners and their staff knew that the bond had not been posted; and (3) appellees testified at the hearing that Capstone had a history of failing to comply with AOGC rules and expressed concerns about Capstone's ability to meet any resulting financial obligations.

■ While not specifically mentioning the words "financial assurance," we hold that Ms. Aday's and Mr. Hampton's objections sufficiently raised the issue regarding the requirement that Capstone demonstrate its financial ability under the AOGC rules. Further, the issue of financial assurance under AOGC Rule H–1 involves the subject-matter jurisdiction of the AOGC, and the means of objecting are contemplated by Rule H–1. Subject-matter jurisdiction is the power to hear and determine the subject matter in controversy between the parties. *Rogers v. Rogers*, 80 Ark.App. 430, 97 S.W.3d 429 (2003). Lack of subject-matter jurisdiction is a defense

that can be raised at any time by any party or the court, and is a defect that is never waived by failure to raise it at a particular point in a proceeding. Ark. R. Civ. P. 12(h)(3) (2011). We hold that the issue is properly before us.

Capstone next claims that the question of the timing of the submission of proof of financial assurance clearly falls within the "rules of internal procedure" discussed in *Yandell, supra.* In *Yandell,* the appellant challenged the validity of a decision of the Havana Board of Education on the ground that the board failed to follow its own internal rules of procedure. The Arkansas Supreme Court rejected this argument, stating that a deliberative body is free to adopt its own rules of internal procedure, the observance of which is within the discretion of the deliberative body itself, free from supervision by the courts. *Id.* Capstone claims that, as long as proof of financial assurance is submitted before a permit is issued, it makes no difference when the proof is submitted because the timing of the submission of proof of financial assurance is clearly procedural and, necessarily, "free from supervision by the courts" as set out in *Yandell.*

We disagree and hold that the ruling in *Yandell, supra,* is not as broad as Capstone advocates. In that case, the Board was accused of considering items not on the agenda for a meeting, failing to allow the public to address the Board, and failing to follow Robert's Rules of Order. *Id.* at 439, 585 S.W.2d at 930. Our supreme court ruled that the complaint failed to state a cause of action. *Id.* Unlike the Board in *Yandell,* the AOGC has adopted rules governing the application for a disposal permit and the conduct of adjudicative hearings. ₈Arkansas law is clear that the failure to follow those rules results in a decision based on "unlawful procedure," which is reversible. *Stueart, supra.*

Additionally, our supreme court in *Yandell* cited *Reaves v. Jones,* 257 Ark. 210, 515 S.W.2d 201 (1974), in which the expulsion of a state senator was being reviewed. The supreme court determined that the rules of the General Assembly are governed solely by the General Assembly, pursuant to article 5, section 11 of the Arkansas Constitution, and are a matter of internal procedure. *Id.* Conversely, nowhere in AOGC Rule B–2(b) or H–1 does it state that those rules are a matter of internal procedure. Accordingly, we agree with appellees that neither *Yandell* nor *Reaves* is relevant to the AOGC and any reliance upon them is misplaced.

■■ The AOGC is bound by its own rules, and an order entered in contravention of those rules was issued by unlawful procedure. *See Reg'l Care Facilities, Inc., supra.* The AOGC is required to comply with the laws of the state and its own rules. Ark.Code Ann. § 15–71–111(a)(3) (Repl.2009). AOGC Rule H–1(c)(3) requires that proof of financial assurance in the form of a surety bond, letter of credit, certificate of deposit, or cash be provided with the application. Failure to so provide causes the AOGC to give written notice of the deficiency and triggers a sixty-day deadline to cure. AOGC Rule H–1(f). Capstone failed to meet that deadline and failed to offer any basis for excusing that neglect. AOGC rules state, unambiguously, that the failure to cure will result in the application being denied. The rules also provide an applicant the opportunity to appeal, and Capstone followed that procedure. However, even at the hearing, Capstone again failed to provide any evidence of ₉financial assurance. Notwithstanding these repeated failures, the AOGC, in direct contravention of its own governing rules, issued the permit to Capstone. To do so was error.

Finally, Capstone argues that the reasonable interpretation of the AOGC's rules is that the sixty-day time limit is intended only to provide the director and staff with bright-line instructions and is not relevant to proceedings before the AOGC. Capstone urges that the practical effect of the AOGC's decision is consistent with the foregoing interpretation, explaining that the colloquy between the commissioners, the hearing officer, the director, and the AOGC staff clearly established that everyone involved believed that, although the submission of proof of financial assurance was a condition prerequisite to the issuance of a permit, there was no requirement that the proof of financial assurance be submitted within any particular time frame.

█ We disagree. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Great Lakes Chem. Corp. v. Bruner,* 368 Ark. 74, 243 S.W.3d 285 (2006). As previously stated, we hold that the commissioners—as well as their staff—are bound by their own rules, and the applicable AOGC rules, though relatively new to the AOGC at the time of the proceedings in this matter, are clear and unambiguous with respect to this issue. Because the AOGC failed to follow the rules and procedures prescribed, we affirm the circuit court's reversal of the AOGC order.

Affirmed.

GLOVER and BROWN, JJ., agree.