PHILLIP T. WHITEAKER, Judge
Kenisha Williform appeals the order of the Craighead County Circuit Court that affirmed the decision of an administrative law judge (ALJ) finding that Williform, a certified nursing assistant (CNA), perpetrated an act of abuse on a resident of a long-term-care facility. On appeal, she raises two arguments, contending that (1) the Arkansas Department of Human Services (DHS) violated statutory provisions requiring it to conduct an investigation into the allegations of abuse, and (2) there was insufficient evidence to support the finding that she committed an act of abuse. We find merit in her first argument, and we reverse.
I. Procedural Background
Williform was employed as a CNA by Lexington Place Healthcare and Rehabilitation in Jonesboro. In June 2015, two coworkers accused her of throwing a catheter bag onto a resident's lap. The incident was reported to the facility administrator, David Brazile, who filled out a Form DMS-762.[1] Brazile forwarded the form to the Office of Long Term Care (OLTC), the division of DHS charged with the responsibility for investigating allegations of suspected maltreatment of long-term-care-facility residents. Brazile also terminated Williform's employment as a result of the incident.
In July, OLTC advised Williform that it had reviewed the allegations and was issuing a "Founded Report" against her. The OLTC notification also informed Williform that the report would be entered on the Registry of Certified Nursing Assistants and the Adult Maltreatment Central Registry if she did not appeal the ruling. Williform timely filed a notice of appeal and requested an administrative hearing.
At the administrative hearing, the ALJ heard testimony from Brazile as well as Kristy Shaw and Paula Ward, the coworkers who had reported the allegation of abuse. Shaw and Ward testified that they observed Williform throw a catheter bag onto the lap of a wheelchair-bound quadriplegic patient. Williform also testified and denied the allegations. At the end of the hearing, Williform argued both that the evidence did not support a finding of abuse and that DHS had not conducted a thorough investigation of the case, as set forth in Arkansas Code Annotated section 12-12-1711 (Repl. 2016). The ALJ subsequently issued an order finding that Williform had abused the resident and that DHS "did due diligence in investigating this matter by producing a hearing packet containing written witness statements, subpoenaing witnesses, and providing reportable documentation to support their 'Findings' in this matter."
*403 Williform filed a timely request for reconsideration of the ALJ's decision, challenging the ALJ's finding of abuse and the conclusion that DHS had conducted a proper investigation. She further asserted that DHS's failure to investigate amounted to a denial of due process. The ALJ issued an amended and substituted order that again found that DHS had conducted a sufficient investigation pursuant to OLTC's rules and regulations.
Williform then filed a petition for review of the ALJ's decision in the Craighead County Circuit Court, asserting that her substantial rights had been prejudiced in three ways: (1) the ALJ's decision was not supported by substantial evidence, (2) DHS violated statutory provisions and engaged in unlawful procedure by failing to conduct an investigation of the abuse allegations as mandated by Arkansas Code Annotated sections 12-12-1710 and 12-12-1711, and (3) DHS violated her due-process rights by failing to conduct an adequate investigation.
The circuit court conducted a hearing on the matter and accepted briefs from the parties. It thereafter issued an order upholding the agency decision, finding that it was supported by substantial evidence of record, was not in violation of any statutory provisions, and did not engage in unlawful conduct. Williform filed a timely notice of appeal.
II. Standard of Review
Our standard of review in this appeal is multitiered. First, because this is an appeal taken pursuant to the Arkansas Administrative Procedure Act, Arkansas Code Annotated sections 25-15-201 to -219 (Repl. 2014), our review is directed not toward the circuit court but toward the decision of the administrative agency. Capstone Oilfield Disposal of Ark., Inc. v. Pope Cty. , 2012 Ark. App. 231, at 4, 408 S.W.3d 65, 67 ; Walls v. Ark. Oil & Gas Comm'n , 2012 Ark. App. 110, 390 S.W.3d 88. We take a limited review of an administrative agency's decision because the agency is better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze the legal issues affecting it. Capstone Oilfield Disposal, supra.
The Administrative Procedure Act provides that a court may reverse or modify an agency's order when the agency's findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by an abuse of discretion. Ark. Code Ann. § 25-15-212(h). In this appeal, Williform argues that the agency's order should be reversed because it was in violation of statutory provisions, was made upon unlawful procedure, and was not supported by substantial evidence of record.
In this opinion, we first consider Williform's argument that the agency's order should be reversed because it was in violation of statutory provisions and was made upon unlawful procedure. Specifically, she argues that DHS failed to follow the statutory requirements set forth in the Adult and Long-Term Care Facility Resident Maltreatment Act ("the Act"), Arkansas Code Annotated sections 12-12-1701 to -1723 (Repl. 2016 & Supp. 2017). To determine whether DHS's actions were in contravention of the statute, we must consider what the statute means. Thus, the second tier of our standard of review involves our rules regarding statutory construction.
We review issues of statutory interpretation de novo.
*404 City of Ft. Smith v. Carter , 372 Ark. 93, 270 S.W.3d 822 (2008). Our supreme court has directed that the basic rule of statutory construction is to give effect to the intent of the General Assembly. Ryan & Co. AR, Inc. v. Weiss , 371 Ark. 43, 263 S.W.3d 489 (2007). In determining the meaning of a statute, our first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. Id. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. Id. Although an agency's interpretation of a statute is highly persuasive, if the statute is not ambiguous, we will not interpret it to mean anything other than what it says. Ark. Dep't of Human Servs. v. Pope , 2013 Ark. App. 429, at 9, 429 S.W.3d 281, 286 (citing Ark. Dep't of Human Servs. v. Parker , 88 Ark. App. 222, 197 S.W.3d 33 (2004) ).
III. Discussion
In her first argument on appeal, Williform contends that DHS failed to investigate the allegations of abuse as required by the Act. Accordingly, we begin by looking at the plain language of the Act and applying our rules of statutory construction to determine the scope of DHS's responsibilities.
In setting forth the investigative powers of DHS, the Act vests jurisdiction in DHS to "investigate all cases of suspected maltreatment of an endangered person or an impaired person." Ark. Code Ann. § 12-12-1710(a). It further provides that OLTC, as a unit of DHS, "shall investigate all cases of suspected maltreatment of a long-term care facility resident." Ark. Code Ann. § 12-12-1710(b)(2). The Act expressly declares that "[t]he Department of Human Services shall conduct a thorough investigation of all suspected adult maltreatment or long-term care facility resident maltreatment in accordance with this subchapter." Ark. Code Ann. § 12-12-1711(a) (emphasis added).
The Act places the duty on DHS, in conducting its investigation, to:
• Complete its investigation within sixty days, Ark. Code Ann. § 12-12-1711(b)(1) ; and
• Make and issue an investigative report that includes, among other things, the "nature, extent and cause of the maltreatment" and "[t]he identity of the person responsible." Ark. Code Ann. § 12-12-1711(b)(2)(A)-(B).
The Act further grants DHS, in conducting its investigation, authority to:
• Enlist the assistance of law enforcement to accompany "the department's investigator if the department has a reasonable belief that the investigator's safety could be compromised," Ark. Code Ann. § 12-12-1711(B)(3) (emphasis added);
• Seek judicial intervention in the following forms:
• An ex parte petition in circuit court requesting an order of investigation, Ark. Code Ann. § 12-12-1714(d)(2)(A)(i) ;
• A court order directing a person in charge of a nursing home "to allow entrance for an examination and investigation," Ark. Code Ann. § 12-12-1714(a) ;
• A court order directing law enforcement "to assist the Department of Human Services to obtain entrance to the home for the required investi gation *405 " of a person's home,[2] Ark. Code Ann. § 12-12-1714(b) (emphasis added); or
• A request that medical, mental health, or financial records-including protected health information-regarding the maltreated person "shall be made available to the department for the purpose of conducting an investigation under this subchapter." Ark. Code Ann. § 12-12-1714(c)(1)-(3) (emphasis added).
Williform contends that these clear and unambiguous statutory provisions place the responsibility for conducting an investigation into allegations of abuse squarely on DHS or, as here, OLTC. She further argues that the record supports a conclusion that DHS did not conduct an investigation in compliance with its statutory responsibility. We agree with both contentions. The plain language of the Act places the responsibility for the investigation squarely on DHS.
DHS tacitly admits its responsibility to investigate under the statute when it states that OLTC "is tasked with investigating all cases of suspected maltreatment of a long-term-care-facility resident." It nonetheless takes the position that it fulfilled its statutory responsibility by implementing rules. DHS argues that Arkansas Code Annotated section 12-12-1723 permits "[t]he Director of the Department of Human Services [to] adopt rules to implement this subchapter." It contends that OLTC, as a unit within DHS, promulgated such rules and regulations for the administration of nursing homes. See Rules and Regulations for Nursing Homes, Ark. Admin. Code 016.06.15-300 (WL, current with amends. 41 Ark. Reg. 9). These rules, in turn, contain provisions instructing nursing homes and long-term-care facilities on how to investigate and report suspected abuse and neglect. We now turn our attention to whether the implementation of these rules fulfills DHS's statutory duty to investigate.
OLTC Regulations § 306 states that a long-term care facility must, pursuant to 42 C.F.R. 483.13 and Arkansas Code Annotated sections 5-28-101 et seq.[3] and 12-12-501 et seq.,[4] "develop and implement written policies and procedures to ensure incidents, including ... alleged or suspected abuse or neglect of residents ... are prohibited, reported, investigated and documented as required by these regulations." Section 306.5 details how an abuse-investigation report must be handled, providing as follows:
The facility must ensure that all alleged or suspected incidents involving resident abuse, exploitation, neglect or misappropriations of resident property are thoroughly investigated. The facility's investigation must be in conformance with *406 the process and documentation requirements specified on the form designated by the Office of Long Term Care, Form DMS-762, and must prevent further potential incidents while the investigation is in progress.
The results of all investigations must be reported to the facility's administrator, or designated representative, and to other officials in accordance with state law, including the Office of Long Term Care. Reports to the Office of Long Term Care shall be made via facsimile transmission by 11:00 a.m. the next business day following discovery by the facility, on form DMS-7734. The follow-up investigation report, made on form DMS-762, shall be submitted to the Office of Long Term Care within 5 working days of the date of the submission of the DMS-7734 to the Office of Long Term Care. If the alleged violation is verified, appropriate corrective action must be taken.
OLTC Regulations § 306.5.
DHS takes the position that OLTC promulgated Form DMS-762 for the reporting of suspected abuse, in accordance with this regulation. Here, the administrator of Lexington Place Healthcare filled out a Form DMS-762 and submitted it to OLTC. Upon receipt of the form, OLTC reviewed it and entered it into the administrative record. Thus, DHS asserts that it complied with the statutory mandate to "conduct a thorough investigation" set forth in section 12-12-1711.
We disagree. Admittedly, section 306.5 of OLTC's regulations plainly allows the nursing-home facility to conduct investigations into allegations of abuse and then report its findings to OLTC. We find it clear, however, from the unambiguous language of the Act that the General Assembly intended the Department of Human Services , not the nursing home or long-term-care facility, to conduct the investigation and that DHS has been given wide-reaching powers in order to effectuate that purpose. We perceive nothing in any of the above-cited statutes authorizing DHS to delegate, via its rule-making authority, the responsibility for conducting its investigation to the nursing home in which the abuse is alleged to have taken place. See Ark.Dep't of Human Servs. v. Howard , 367 Ark. 55, 62, 238 S.W.3d 1, 6 (2006) (noting that it is well settled that an agency has no right to promulgate a rule or regulation contrary to a statute) (citing McLane Co., Inc. v. Davis , 353 Ark. 539, 110 S.W.3d 251 (2003) ; McLane Co., Inc. v. Weiss , 332 Ark. 284, 965 S.W.2d 109 (1998) ; Pledger v. C.B. Form Co. , 316 Ark. 22, 871 S.W.2d 333 (1994) ). The plain language of the statute repeatedly vests that authority, and grants concomitant specific investigative powers, solely in DHS.[5]
We further conclude that the evidence is clear and undisputed that neither DHS nor OLTC conducted an investigation of this case, much less the "thorough investigation" contemplated by the statute. Before the hearing, Williform asked DHS in three separate emails to identify the DHS employees who conducted the investigation and made the investigative determination that the allegation of abuse was founded. DHS never responded to the request. DHS did not respond because DHS did not investigate.
*407 Instead, David Brazile, the facility administrator, conducted the investigation. He took statements from CNA Kristy Shaw, treatment nurse Paula Ward, Williform, and the resident. At the hearing before the ALJ, each witness testified that no one from DHS contacted him or her.[6] DHS did not send anyone to the facility and did not conduct any interviews. Although DHS asserts that it conducted its "investigation" by reviewing the report filled out and submitted by Brazile, as set forth above, the completion of that form by Brazile did not satisfy the requirements of the statute.
Accordingly, the agency's decision was in violation of statutory provisions and was made upon unlawful procedure, and it must be reversed. See Ark. Code Ann. § 25-15-212(h)(1) & (3). Because we reverse for this reason, it is unnecessary to consider Williform's second argument, wherein she asserts that the agency decision was not supported by substantial evidence. See Ark. Dep't of Human Servs. v. Koprovic , 2012 Ark. App. 645, at 5, 2012 WL 5438952 (stating that when an agency's decision is reversed based on one subsection of § 25-15-212, there is no need to discuss the other possible basis for reversing its decision under the statute).
Reversed.
Gladwin and Glover, JJ., agree.

The full name of the form is the "Facility Investigation Report for Resident Abuse, Neglect, Misappropriation of Property, And Exploitation of Residents in Long-Term Care Facilities."

When the suspected abuse occurs in a person's home, the Act provides that DHS's investigation shall include a visit to the maltreated adult's home and an interview with the maltreated adult, and "[a ]n investigator shall interview the maltreated person alone and out of the hearing of any next of kin or other person responsible for the maltreated person's care." Ark. Code Ann. § 12-12-1711(b)(2)(F)(i)-(ii) (emphasis added). While this provision does not apply in the instant case because the alleged abuse did not occur in an individual's home, it is cited herein to demonstrate that the statute clearly contemplates the existence of "an investigator" who shall conduct the "thorough investigation" that the statute requires of DHS.

Arkansas Code Annotated sections 5-28-101 to -110 (Repl. 2013) are criminal code provisions pertaining to the abuse of adults.

Arkansas Code Annotated sections 12-12-501 to -519 were, prior to their repeal by Act 749 of 2009, provisions pertaining to child-abuse reporting.

As mentioned above, section 12-12-1710(b)(2) states that OLTC shall investigate all cases of suspected maltreatment that occur in long-term-care facilities. This is not a delegation of authority to an entity outside of DHS; it is simply to make clear that OLTC, a division within DHS, investigates nursing-home cases, while the Adult Protective Services Unit, another unit of DHS, investigates cases that arise outside of long-term-care facilities. See Ark. Code Ann. § 12-12-1710(b)(1). The ultimate responsibility for the investigation remains with DHS.

The ALJ heard testimony from Brazile, Shaw, Ward, and Williform. DHS did not present any witness from its agency.